## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

FLORIDA DEMOCRATIC PARTY,

        Plaintiff,

v.

RICHARD SCOTT, in his official
capacity as Governor of the State of
Florida, and KEN DETZNER, in his
official capacity as Secretary of State of
the State of Florida,

        Defendants.

CASE NO. 4:16-cv-626

## COMPLAINT FOR EMERGENCY INJUNCTIVE AND
## DECLARATORY RELIEF

Plaintiff, the FLORIDA DEMOCRATIC PARTY, by and through the undersigned attorneys, files this COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF against Defendant RICHARD SCOTT, in his official capacity as Governor of the State of Florida, and Defendant KEN DETZNER, in his official capacity as Secretary of State of the State of Florida, (collectively, "Defendants"), and alleges upon information and belief as follows:

## NATURE OF THE CASE

1.      "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined."  *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

2.      Under state law, the voter registration deadline for Florida voters is Tuesday, October 11, 2016.  Eligible United States citizens who fail to register by October 11 will be unable to register thereafter in time to cast a ballot in the upcoming 2016 general election scheduled to occur on November 8, 2016.

3.      Florida voters, however, face a daunting and, indeed, life-threatening obstacle to registering to vote in the form of Hurricane Matthew, a massive and dangerous weather event that has threatened Florida with substantial damage and loss of life.

4.      On Thursday, October 6, Defendant Scott unambiguously ordered Florida citizens to "evacuate, evacuate, evacuate" the areas in Hurricane Matthew's path.  "There are no excuses. You need to leave," he told Floridians. "This storm will kill you.  Time is running out."  Arek Sarkissian & Doug Stanglin, *Hurricane Matthew: Florida Governor Says 'Evacuate, Evacuate, Evacuate,'* USA Today (Oct. 6, 2016), http://www.usatoday.com/story/news/nation/2016/10/06/hurricane-matthew-batters-bahamas-set-strengthen-florida-

approach/91652096/ (last visited Oct. 8, 2016); Camila Domonoske, *Millions of Coastal Residents Warned to Flee Inland as Hurricane Nears Florida*, NPR (Oct. 6, 2016), http://www.npr.org/sections/thetwo-way/2016/10/06/496836153/ millions-of-coastal-residents-warned-to-flee-inland-as-hurricane-nears-florida (last visited Oct. 8, 2016).

5.     That very same day, Defendant Scott refused to extend the voter registration deadline for the very citizens heeding his orders to evacuate— forcing voters to choose between their safety and the safety of their families, on one hand, and their fundamental right to vote, on the other hand.

6.     Many elected officials, citizens, and organizations, including Plaintiff, have called upon Defendant Scott to extend Florida's voter registration deadline so that Florida voters need not choose between safety and the fundamental right to vote.  Defendant Scott has thus far refused to extend the deadline.

7.     Plaintiff brings this lawsuit because Defendants have refused to take any action to protect the voting rights of Florida citizens who, due to Hurricane Matthew, cannot register to vote by the upcoming October 11 registration deadline.

## JURISDICTION AND VENUE

8.      Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

9.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, because Plaintiff brings this action to redress the deprivation, under color of State law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law, and because Plaintiff brings this action to secure equitable relief under federal law providing for the protection of voting rights.

10.     This Court has personal jurisdiction over Defendants, who are sued in their official capacity only.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiff's claims occurred in this judicial district.

12.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

13.    Plaintiff FLORIDA DEMOCRATIC PARTY ("FDP") is a political party recognized by Florida law.  *See* Fla. Stat. § 103.091.  FDP is the statewide organization representing Democratic candidates and voters throughout the State of Florida within the meaning of Florida Statute § 103.121 and all other applicable provisions of the election laws.  FDP's purpose is to elect Democratic Party candidates to public office throughout Florida.  To accomplish its purpose, FDP engages in vitally important activities, including supporting Democratic Party candidates in national, state, and local elections through fundraising and organizing efforts; protecting the legal rights of voters; and ensuring that all voters have a meaningful ability to cast ballots in Florida.  FDP has millions of members and constituents across Florida and in storm-affected areas, including millions of Floridians who are registered with the Florida Department of State's Division of Elections as Democrats, and many other Floridians who regularly support and vote for candidates affiliated with the Democratic Party.

14.    Defendants' refusal to extend the voter registration deadline in the face of a catastrophic emergency that has made it impossible for many Floridians to register by the October 11 deadline directly harms FDP, its members, and constituents.  It is likely that citizens who would otherwise register as Democrats prior to the registration deadline—or who have already

5

registered as Democrats with a third-party voter registration agency that is being

prevented, by Hurricane Matthew, from turning in that voter's registration

paperwork—will not be able to do so, thereby decreasing the overall likelihood

that FDP will be successful in its efforts to help elect Democratic candidates to

public office.

15.    Defendant RICHARD SCOTT is sued in his official capacity as

Governor of the State of Florida.  Defendant Scott is a person within the

meaning of 42 U.S.C. § 1983 and acts under color of state law.  As Governor of

Florida, Defendant Scott is the state's chief executive officer and is responsible

for the administration of all state laws, including those pertaining to voter

registration.

16.    Defendant KEN DETZNER is sued in his official capacity as

Secretary of State of the State of Florida. Defendant Detzner is a person within

the meaning of 42 U.S.C. § 1983 and acts under color of state law.  Pursuant to

Florida Statute § 97.012, the Secretary of State is the chief elections officer of

the State and is responsible for the administration of state laws affecting voting,

including those pertaining to voter registration.  As Secretary of State,

Defendant Detzner's duties consist, among other things, of "[o]btain[ing] and

maintain[ing] uniformity in the interpretation and implementation of the election

laws." *Id.* at § 97.012(1).

## STATEMENT OF FACTS AND LAW

17.    Unlike many other states, Florida does not permit residents to register to vote online.  *See* Fla. Stat. § 97.053.  Nor does it offer same-day registration on election day.  Rather, Floridians must complete a paper Florida Voter Registration Application and deliver it, either in person or by mail, to the office of the County Supervisor of Elections, the Florida Division of Elections, or a third-party voter registration agency.  *Id*.

18.    Tuesday, October 11 is the voter registration deadline for the upcoming general election on November 8, 2016.  *See* Fla. Stat. §§ 97.053, 97.055, 97.0555.  *See also* Fla. Dep't of St., Div. of Elections, 2016 Florida Voter Registration and Voting Guide, *available at* http://dos.myflorida.com/media/693760/voter-registration-guide.pdf.

19.    October 9 is the deadline for county election officials to submit early voting plans, including identification of all early voting sites and the hours of operation for such sites.  *See* Fla. Stat. § 101.657(1)(b).

20.    After claiming nearly 900 lives in Haiti and the Caribbean, Hurricane Matthew hit Florida on the afternoon of Thursday, October 6, 2016, just five days before the October 11 voter registration deadline.  The largest storm to hit the eastern seaboard in a decade, Hurricane Matthew tore through Florida with 130-mile-per-hour winds, destroying roads and bridges and killing

7

at least four people.  President Barack Obama declared a state of emergency in
more than two dozen Florida counties.  Defendant Scott deployed 3,500
National Guard troops and insisted that 1.5 million Florida residents evacuate
their homes and relocate inland.  By Friday evening, more than 1 million
residents had lost power, more than 500,000 residents were still in evacuation
zones, and thousands of residents were in shelters.  *See* Arek Sarkissian & Doug
Stanglin, *Hurricane Matthew: Florida Governor Says 'Evacuate, Evacuate,*
*Evacuate,'* USA Today (Oct. 6, 2016), http://www.usatoday.com/story/news/
nation/2016/10/06/hurricane-matthew-batters-bahamas-set-strengthen-florida-
approach/91652096/ (last visited Oct. 8, 2016); J.J. Gallagher, Morgan Winsor,
Emily Shapiro, & Julia Jacobo, *Hurricane Matthew Batters Florida Coast;*
*4 Dead, Over 1 Million Lose Power*, ABC News (Oct. 8, 2016),
http://abcnews.go.com/US/hurricane-matthew-batters-florida-coast-dead-
million-lose/story?id=42608853 (last visited Oct. 8, 2016).

21.    On Thursday, October 6, the campaign manager of Democratic
presidential nominee Hillary Clinton and several Florida lawmakers, including
Senator Bill Nelsen and Representative Debbie Wasserman Schultz, asked
Defendant Scott to extend the voter registration deadline.  *See* Eli Yokley,
*Florida Democrats Call on Rick Scott to Extend Voter Registration Deadline*,
Morning Consult (Oct. 7, 2016), https://morningconsult.com/alert/florida-

democrats-call-scott-extend-voter-registration-deadline/ (last visited Oct. 8,

2016); Gabriel Debenedetti, *Clinton Campaign Chief to Florida: Extend Voter*

*Registration Because of Storm*, Politico (Oct. 6, 2016), http://www.politico.com/

story/2016/10/clinton-campaign-florida-voter-registration-hurricane-229249

(last visited Oct. 8, 2016).

22.    While acknowledging that he has "never seen anything like

[Hurricane Matthew] before," Defendant Scott nevertheless refused to extend

the voter registration deadline to give Floridians additional time to register.  *See*

Reena Flores, *Rick Scott Won't Extend Florida Voter Registration Because of*

*Hurricane*, CBS News (Oct. 7, 2016), http://www.cbsnews.com/news/rick-scott-

wont-extend-florida-voter-registration-because-of-hurricane/ (last visited Oct. 8,

2016); *Gov. Scott Says No to Extending Florida Voter-Registration Deadline*,

Miami Herald, (Oct. 6, 2016), http://miamiherald.typepad.com/nakedpolitics/

2016/10/gov-scott-says-no-to-extending-florida-voter-registration-deadline.html

(last visited Oct. 8, 2016).

23.    During a press conference on Thursday, October 6, Defendant Scott

chose to blame his constituents for failing to register before Hurricane Matthew

hit Florida.  He stated, "everybody's had a lot of time to register.  On top of that,

we have lots of opportunities to vote: early voting, absentee voting, Election

Day.  So I don't intend to make any changes."  Reena Flores, *Rick Scott Won't*

*Extend Florida Voter Registration Because of Hurricane*, CBS News (Oct. 7, 2016), http://www.cbsnews.com/news/rick-scott-wont-extend-florida-voter-registration-because-of-hurricane/ (last visited Oct. 8, 2016).

24.    Defendant Scott dismissed the ramifications of his refusal to extend the deadline, stating, "Look, this is, this is politics." *Id*.

25.    Defendant Scott is a member of the Republican Party of Florida, a staunch supporter of Republican presidential nominee Donald Trump, and Chair of Rebuilding America Now, a pro-Trump super PAC.  *See* Marc Caputo, *Scott to Chair Pro-Trump Super PAC*, Politico (July 27, 2016), http://www.politico.com/states/florida/story/2016/07/rick-scott-to-chair-pro-trump-super-pac-104308.

26.    Defendants' refusal to extend the registration deadline will prevent thousands of Florida residents in the areas affected by Hurricane Matthew from registering and voting in the upcoming general election.  In the nine days in October prior to the voter registration deadline preceding the 2012 election, for example, roughly *181,000* Floridians registered to vote.  *See* Fla. Dep't of St., Div. of Elections, Voter Registration Monthly Report October 2012, *available at* http://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-registration-monthly-reports/ (Archived Monthly Reports, 2012, October, MonthlyReport2.pdf).

27.     Even if would-be voters choose to disregard the commands of Defendant Scott and the Federal Emergency Management Agency and venture out to attempt to register amid the chaos caused by Hurricane Matthew, it is unlikely that any office permitted to accept voter registration applications will be open.  All Board of County Commissioners offices were closed late last week. Bridges are closed. Many roads that have not been destroyed are flooded or otherwise impassable.  And registering by mail is not an option: the U.S. Postal Service has suspended operations in most (if not all) areas affected by Hurricane Matthew.  *See Postal Service Prepping for Hurricane Matthew*, WJHG (Oct. 6, 2016), http://www.wjhg.com/content/news/Postal-service-prepping-for-Hurricane-Matthew-396212161.html (last visited Oct. 8, 2016); *Closings, Cancellations Due to Hurricane Matthew*, WTSP (Oct. 6, 2016), http://www.wtsp.com/news/local/florida/closings-due-to-hurricane-matthew/329299515 (last visited Oct. 8, 2016).

28.     Defendants' refusal to extend the voter registration deadline will have a substantial effect on the upcoming general election and will unfairly and arbitrarily favor some Florida voters over others.  Unlucky Floridians who happen to live in the counties stricken by Hurricane Matthew who have not yet registered will be unable to register by the October 11 deadline and will therefore not be permitted to vote in the upcoming general election.  Meanwhile,

their neighbors to the west, who by happy geographic accident will not have to contend with the devastation of Hurricane Matthew, will have no difficulty registering by the October 11 deadline and casting their vote in the general election.

29.    Moreover, Defendants' refusal to extend the voter registration deadline will have a decidedly partisan effect because Democratic-leaning communities, including minority voters and young voters, register at higher percentages shortly before the registration deadline.  *See* Matt Dixon & Marc Caputo, *Scott Won't Extend Voter Registration Deadline as Hurricane Matthew Threatens State*, Politico (Oct. 6, 2016), http://www.politico.com/states/florida/ story/2016/10/scott-wont-extend-voter-registration-deadline-as-hurricane-matthew-approaches-106172#ixzz4MWytl0yG (last visited Oct. 8, 2016).

30.    On information and belief, because of Hurricane Matthew, some county election officials were unable to timely submit early voting plans and/or verify that identified early voting sites remain viable in light of potential storm damage.  Those officials will need extra time to submit their early voting plans and/or notify affected residents of those changes.

31.    Meanwhile, other states directly impacted by Hurricane Matthew have taken action to protect voters.  South Carolina extended its mail-in voter registration deadline, and Georgia is encouraging voters to take advantage of

online registration—an option not available to Floridians. *See How to Register to Vote in South Carolina*, Heavy (Oct. 7, 2016), http://heavy.com/news/ 2016/10/how-can-i-register-to-vote-in-south-carolina-online-person-by-mail- hurricane-matthew-when-is-deadline/ (last visited Oct. 8, 2016); Kristina Torres, *More Than Half a Million People Have Registered to Vote in Georgia*, The Atlantic Journal-Constitution (Oct. 7, 2016), http://www.ajc.com/news/state-- regional-govt--politics/more-than-half-million-people-have-registered-vote- georgia/sOD9NTX3YzrUNZUjBEUVVK/ (last visited Oct. 8, 2016).

## CLAIMS FOR RELIEF

### COUNT I
### Undue Burden on the Right to Vote in Violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment

32.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

33.    Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *See*

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

34.     The court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'"  *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

35.     Unless Plaintiff is granted the relief requested, there is a strong likelihood that the right to vote of thousands of Floridians, including Plaintiff's members and constituents, will be severely burdened (if not eliminated entirely) in the 2016 general election.

36.     Because of Hurricane Matthew, many Floridians who would have registered to vote prior to the October 11 registration deadline have been displaced or otherwise prevented from registering, and thus cannot register to vote by the October 11 deadline.  Moreover, many offices at which voters could register in person and U.S. Postal Offices where voters could submit registration applications have been closed, preventing Floridians in areas impacted by Hurricane Matthew from timely submitting registration materials.

37.    As a result, enforcing the October 11 voter registration deadline unfairly, severely, and disproportionately burdens the voting rights of Floridians in storm-affected areas.

38.    The burdens imposed by the October 11 voter registration deadline are especially severe for certain voter populations, including minority voters and poor voters.  The burdens imposed by the October 11 voter registration deadline, individually and collectively, outweigh any conceivable benefits of that deadline.

39.    The State has not provided any colorable justification for its refusal to extend the voter registration deadline notwithstanding the consequences of Hurricane Matthew.  In Florida, elections supervisors usually see a surge in voter registration shortly before the registration deadline.  In the last presidential election year, roughly 181,000 people registered during the nine days before the registration deadline.  Nonetheless, the Governor has refused to extend the voter registration deadline, stating simply that "[e]verybody has had a lot of time to register."

40.    Hurricane Matthew has prevented local election officials from meeting the October 9 deadline for submission of early voting plans that, among other things, must identify viable early voting sites.

15

41.    That it is possible for Florida to extend the registration deadline cannot be disputed. Other states impacted by Hurricane Matthew, including South Carolina, have extended voter registration deadlines to mitigate the consequences of the hurricane and afford voters a viable opportunity to register.

**COUNT II**
**Disparate Treatment in Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983**

42.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

43.    The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution guarantees qualified voters a substantive right to participate equally with other qualified voters in the electoral process.  Further, the equal right to vote that is protected by the Equal Protection Clause is protected in more than the initial allocation of the franchise; equal protection applies to the manner of its exercise as well.  *See Bush v. Gore*, 531 U.S. 98, 104 (2000).  Thus, a state may not arbitrarily impose disparate treatment on similarly situated voters.

44.    As set forth above, the effect of the State's refusal to extend the voter registration deadline is to treat similarly situated Floridians differently.

45.    Specifically, Floridians in inland areas not affected by Hurricane Matthew may register to vote until the October 11 deadline without impediment,

because (among other reasons) they have not been ordered to evacuate and they reside in areas where local government services remain available. In contrast, many Floridians in storm-affected areas are either displaced or otherwise prevented from registering to vote as a result of Hurricane Matthew. And, even if they attempted to register notwithstanding those barriers, the local government offices that they would need to access are closed as a result of the hurricane. Likewise, Hurricane Matthew has prevented local election officials from meeting the October 9 deadline for submission of early voting plans that, among other things, must identify viable early voting sites.

46.     There is no rational basis for favoring voters in inland areas over voters in storm-affected areas with respect to the right to cast a ballot in the upcoming general election. This disparate treatment of Florida residents based solely upon the area in which they live is unfair and arbitrary, and the State has not and cannot set forth any valid justification for its disparate treatment of members of the electorate.

47.     Based on the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiff and Florida voters of equal protection under the law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## COUNT III
## Violation of Section 2 of the Voting Rights Act

48.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

49.    Section 2 of the Voting Rights Act of 1965 provides in relevant part that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a).

50.    The State's refusal to extend the voter registration deadline and/or the deadline for local election officials to submit early voting plans notwithstanding the effects of Hurricane Matthew has abridged and/or denied, and will continue to abridge and/or deny, the voting rights of minority voters in Florida on account of race.

51.    The areas affected by Hurricane Matthew include substantial populations of minority voters, including African Americans and Latinos. Minorities in storm-affected areas are disproportionately likely to register to vote in the days immediately preceding the registration deadline.  As a result,

the effective elimination of the final days preceding the registration deadline will have a disparate impact on minority voters.

52.    Minority voters in Florida, including African Americans and Latinos, have suffered from, and continue to suffer from, discrimination on the basis of race, including discrimination touching on the rights to register, to vote, or to otherwise participate in the democratic process.

53.    The ongoing effects of this discrimination include significant and continuing disparities between minorities and other members of the electorate, including disparities in socioeconomic conditions, employment and health, education, access to transportation, and access to government services.

54.    Those disparities, in turn, mean that minority voters in storm-affected areas will have more difficulty overcoming the barriers to voter registration caused by Hurricane Matthew than other members of the electorate in the storm-affected areas.

55.    As a result, the challenged voter registration deadline will impose a disproportionate burden on the voting rights of minority voters in the storm-affected areas. That disproportionate burden will be caused by and is linked to the social and historical conditions that have produced discrimination against minorities, and the State's insistence that it will not modestly extend the voter

19

registration deadline has, at best, a tenuous connection to any legitimate government policy underlying the registration deadline.

56.    The voter registration deadline challenged under Section 2 has had and, if not declared illegal and enjoined, will continue to have a disparate adverse impact on minority voters in Florida, including African Americans and/or Latinos.

57.    Under the totality of the circumstances, the voter registration deadline has resulted and will result in less opportunity for minorities than for other members of the electorate in Florida to participate in the political process and to elect candidates of their choice, and therefore violates Section 2 of the Voting Rights Act.

## DECLARATORY AND INJUNCTIVE RELIEF
### 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65

58.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

59.    This case presents an actual controversy because Defendants' present and ongoing refusal to allow Floridians an opportunity to register to vote in the general election subjects Plaintiff and its members and constituents to

serious and immediate harms, warranting the issuance of a declaratory judgment.

60.    Plaintiff seeks preliminary and/or permanent injunctive relief to protect its statutory and constitutional rights and avoid the injuries described above.  A favorable decision enjoining Defendants from enforcing the October 11 voter registration deadline, and requiring Defendants to extend the period for submitting early voting plans, would redress and prevent the irreparable injuries to Plaintiff and its members and constituents identified herein, for which Plaintiff has no adequate remedy at law or in equity.

61.    The Defendants will incur little to no burden in if the relief sought here is granted.  Any minor administrative burden imposed on Defendants pales in comparison to the fundamental constitutional injury of denial of the right to vote that Plaintiff and its members and constituents will suffer in the absence of the relief requested.

62.    The public interest weighs strongly in favor of extending the October 11 voter registration deadline and extending the deadline for submission of early voting plans to permit every lawful, eligible citizen who wishes to vote to vote in the upcoming general election.  The balance of hardships thus tips strongly in favor of Plaintiff.

63.    Concurrently with this Complaint, Plaintiff has filed an emergency motion for temporary restraining order in accord with Local Rule 7.1(L).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

A.    Ordering Defendants to extend Florida's voter registration deadline by at least one week (from October 11, 2016 up to and including October 18, 2016).

B.    Preliminarily and permanently enjoining Defendants from enforcing the current October 11, 2016 voter registration deadline.

C.    Ordering Defendants to extend the deadline for counties to submit or amend early voting plans until at least October 16, 2016, to the extent that any counties have been unable to submit their early voting plans (and/or verify that identified early voting sites remain viable post-hurricane) by October 9, 2016.

D.    Awarding Plaintiff its costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

E.    Granting such other relief as the Court deems just and proper.

Dated: October 9, 2016                    Respectfully submitted,


                                          */s/ Mark Herron*
                                          Mark Herron
                                          Fl. Bar. No. 199737
                                          mherron@lawfla.com
                                          Robert J. Telfer III
                                          Fl. Bar No. 0168694
                                          rtelfer@lawfla.com
                                          **MESSER CAPARELLO**
                                          2618 Centennial Place
                                          Tallahassee, FL 32308
                                          Telephone: (850) 222-0720
                                          Facsimile: (850) 558-0659

                                          and

                                          Marc E. Elias
                                          D.C. Bar No. 44207
                                          (Admitted *Pro Hac Vice*)
                                          MElias@perkinscoie.com
                                          Kevin J. Hamilton
                                          Wash. Bar No. 15648
                                          (*Pro Hac Vice* Application Pending)
                                          KHamilton@perkinscoie.com
                                          **PERKINS COIE LLP**
                                          700 Thirteenth Street, N.W., Suite 600
                                          Washington, D.C. 20005-3960
                                          Telephone: (202) 654-6200
                                          Facsimile: (202) 654-6211

                                          *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties via electronic mail; Adam S. Tanenbaum, General Counsel for The Secretary of State, adam.tanenbaum@dos.myflorida.com, William Spicola, General Counsel for Governor, Rick Scott, william.spicola@eog.myflorida.com

*/s/*

**Mark Herron**