## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FLORIDA DEMOCRATIC PARTY, | |
| Plaintiff, | |
| v. | CASE NO. 4:16-cv-626 |
| RICHARD SCOTT, in his official capacity as Governor of the State of Florida, and KEN DETZNER, in his official capacity as Secretary of State of the State of Florida, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Florida Democratic Party respectfully submits the following memorandum of law in support of its emergency motion for a temporary restraining order and order to show cause why a temporary restraining order and/or preliminary injunction should not issue, requiring the State of Florida to extend the voter registration deadline from October 11, 2016 to October 18, 2016. Defendants' refusal to extend the deadline—notwithstanding the inability of thousands of Floridians to register because of Hurricane Matthew—violates the First and Fourteenth Amendments to the U.S. Constitution and Section 2 of the Voting Rights Act.

## I.    NATURE OF THE CASE

In the absence of relief from this Court, there is no question that thousands (and quite likely tens of thousands) of Floridians will be disenfranchised.

As Hurricane Matthew bore down on Florida late last week, leaving a wake of devastation behind it, Governor Rick Scott could not have been any clearer about what those in the storm's path should do: "Evacuate, evacuate, evacuate."[1] According to Governor Scott, there were "no excuses" and Floridians "need[ed] to leave" because "[t]his storm will kill you. Time is running out."[2]  Vast numbers of people heeded the Governor's warning, and affected areas—including government offices in those areas—shut down.[3]

Unfortunately, Governor Scott's appropriate concern for Floridians' physical safety has been matched by his disregard for their fundamental right to vote. Voter registration in Florida is scheduled to end on Tuesday, October 11.  In 2012, roughly *181,000* Floridians registered to vote in the nine days in October prior to the registration deadline.  *See* Declaration of Marc E. Elias ("Elias Decl."), Exhibit

---

[1] Arek Sarkissian & Doug Stanglin, *Hurricane Matthew: Florida Governor Says 'Evacuate, Evacuate, Evacuate,'* USA Today (Oct. 6, 2016), http://www.usatoday.com/story/news/nation/2016/10/06/hurricane-matthew-batters-bahamas-set-strengthen-florida-approach/91652096/ (last visited Oct. 8, 2016).

[2] Camila Domonoske, *Millions of Coastal Residents Warned to Flee Inland as Hurricane Nears Florida*, NPR (Oct. 6, 2016), http://www.npr.org/sections/thetwo-way/2016/10/06/496836153/millions-of-coastal-residents-warned-to-flee-inland-as-hurricane-nears-florida (last visited Oct. 8, 2016).

[3] *See, e.g.*, Arelis R. Hernandez & Mark Berman, *Hurricane Matthew Batters Florida's Northeast Coast; Four Deaths Linked to Storm*, Wash. Post (Oct. 7, 2016), https://www.washingtonpost.com/news/post-nation/wp/2016/10/07/hurricane-matthew-rumbles-along-floridas-coast-as-governor-warns-this-is-not-over/?utm_term=.8a0588b55c22.

("Ex.") A. Governor Scott has received numerous requests to extend the voter registration deadline to allow those affected by the hurricane to register after the massive weather event has passed.  But he has flatly refused to extend the voter deadline, even for a few days.  Thus, he has forced Floridians to choose between their safety and their right to vote.  By contrast, other states impacted by the hurricane are protecting the right to vote by extending registration deadlines and encouraging online registration—an option unavailable to Floridians.[4]

Governor Scott's refusal to extend the registration deadline does not promote any state interest—let alone one that justifies certain disenfranchisement of thousands of Floridians.  Moreover, Governor Scott's failure to extend the deadline will disproportionately and unfairly burden the rights of Floridians with the most to lose: those directly in the path of Hurricane Matthew.  Failure to extend the deadline will also disproportionately affect members of Florida's minority communities.  Simply put, Floridians who have borne the brunt of Hurricane Matthew should not also be forced to forfeit their voting rights.  The Court should therefore order Defendants to extend the voter registration process during the pendency of this litigation, at least until October 18, 2016.

---

[4] *See How to Register to Vote in South Carolina*, Heavy (Oct. 7, 2016), http://heavy.com/news/ 2016/10/how-can-i-register-to-vote-in-south-carolina-online-person-by-mail-hurricane-matthew-when-is-deadline/ (last visited Oct. 8, 2016); Kristina Torres, *More Than Half a Million People Have Registered to Vote in Georgia*, The Atlantic Journal-Constitution (Oct. 7, 2016), http://www.ajc.com/news/state--regional-govt--politics/more-than-half-million-people-have-registered-vote-georgia/sOD9NTX3YzrUNZUjBEUVVK/ (last visited Oct. 8, 2016).

## II.     STATEMENT OF FACTS

### A.     Florida's Voter Registration Deadline Is October 11.

Florida residents cannot register to vote online.  *See* Fla. Stat. § 97.053.  Nor does Florida offer same-day registration on election day.  Thus, Floridians must complete a paper Voter Registration Application and deliver it, either in person or by mail, to the office of the County Supervisor of Elections, the Florida Division of Elections, or a third-party voter registration agency.  *See id.*[5]  The deadline for delivering voter registration forms for the upcoming general election is this coming Tuesday, October 11.  *See id.* §§ 97.053, 97.055, 97.0555.[6]

Completed registration applications that are submitted in person are considered delivered at the time the applications are *actually* delivered to the elections official.  *See* Fla. Admin. Code. Ann. r. 1S-2.042(7)(a).  Applications delivered by mail are considered delivered as of the date they are postmarked, if a clear postmark is present on the mailing envelope.  *See id.*  If no clear postmark is present, then the date of delivery for mailed applications is the actual date of receipt.  *See id.*

Interest in an impending election reaches its zenith as Election Day approaches.  Thus, Florida typically sees a surge in voter registration in the days

---

[5] In Florida, an organization that has registered as a third party voter registration organization may collect completed voter registration applications from voters and deliver those applications to county election officials on the voters' behalf.  *See id.* § 97.0575(1).

[6] *See also* Fla. Dep't of State, Div. of Elections, *2016 Florida Voter Registration and Voting Guide* (July 1, 2016), http://dos.myflorida.com/media/693760/voter-registration-guide.pdf.

leading up to the voter registration deadline.  Indeed, in 2012 (the last presidential

election year), roughly 181,000 Floridians registered to vote in the nine days in

October prior to the registration deadline.  *See* Elias Decl., Ex. A.  Only 21 percent

of those voters were registered Republicans, and many were young and/or minority

voters.[7]  That year, President Barack Obama carried Florida by just 74,309 votes,

or less than 1% of the vote.[8]

### B.  Hurricane Matthew—the Largest Hurricane to Hit Florida in a Decade—Strikes Just Days Before the Registration Deadline.

After claiming nearly 900 lives in Haiti and the Caribbean, Hurricane

Matthew hit Florida on the afternoon of Thursday, October 6, 2016, just five days

before the October 11 voter registration deadline.[9]  The largest storm to hit the

eastern seaboard in a decade, Hurricane Matthew lashed coastal areas with 130-

mile-per-hour winds and destroyed roads and bridges.[10]  President Obama declared

a state of emergency in more than two dozen Florida counties.[11]  Meanwhile,

Governor Scott deployed 3,500 National Guard troops and insisted that 1.5 million

---

[7] Matt Dixon & Marc Caputo, *Scott Won't Extend Voter Registration Deadline as Hurricane Matthew Approaches*, Politico (Oct. 6, 2016), http://www.politico.com/states/florida/story/2016/10/scott-wont-extend-voter-registration-deadline-as-hurricane-matthew-approaches-106172#ixzz4MWytl0yG (last visited Oct. 8, 2016).

[8] *See id.*

[9] Arek Sarkissian & Doug Stanglin, *Hurricane Matthew: Florida Governor Says 'Evacuate, Evacuate, Evacuate,'* USA Today (Oct. 6, 2016), http://www.usatoday.com/story/news/nation/2016/10/06/hurricane-matthew-batters-bahamas-set-strengthen-florida-approach/91652096/ (last visited Oct. 8, 2016).

[10] *See id.*

[11] *See id.*

Florida residents evacuate their homes and move inland.[12]  By Friday evening, four people were killed, more than 1 million residents had lost power, more than 500,000 residents were still in evacuation zones, and more thousands of residents were in shelters.[13]

In anticipation of Hurricane Matthew, the affected areas were shut down. Governor Scott directed state offices to be closed in more than 30 counties.[14]  All Board of County Commissioners offices were closed.  And the U.S. Postal Service suspended operations in the affected areas.[15]

> **C.** **Defendants Refuse to Modestly Extend the Voter Registration Deadline to Allow Floridians to Register Once the Storm and Its Aftermath Have Passed.**

On Thursday, October 6, the campaign manager of Democratic presidential nominee Hillary Clinton and several Florida lawmakers, including Senator Bill Nelsen and Representative Debbie Wasserman Schultz, asked Governor Scott to

---

[12] *See id.*

[13] J.J. Gallagher, Morgan Winsor, Emily Shapiro, & Julia Jacobo, *Hurricane Matthew Batters Florida Coast; 4 Dead, Over 1 Million Lose Power*, ABC News (Oct. 8, 2016), http://abcnews.go.com/US/hurricane-matthew-batters-florida-coast-dead-million-lose/story?id=42608853 (last visited Oct. 8, 2016).

[14] *Closings, Cancellations Due to Hurricane Matthew*, WTSP (Oct. 6, 2016), http://www.wtsp.com/news/local/florida/closings-due-to-hurricane-matthew/329299515 (last visited Oct. 8, 2016).

[15] Jeff Tavvs, *Mail Deliveries to End at Noon as Hurricane Matthew Approaches*, Local 10 (Oct. 6, 2016), http://www.local10.com/weather/hurricane-matthew/mail-delivery-suspended-hurricane-matthew (last visited Oct. 8, 2016).

modestly extend the voter registration deadline.[16]  As they noted, it was simply

unsafe for citizens to attempt to leave their homes in order to register to vote.

Governor Scott airily dismissed those concerns, claiming that "everybody's had a

lot of time to register.  On top of that, we have lots of opportunities to vote: early

voting, absentee voting, Election Day.  So I don't intend to make any changes."[17]

Governor Scott also dismissed concerns about disenfranchising voters in the storm-

affected areas, many of which lean heavily Democratic, saying "this is politics."[18]

Governor Scott is a Republican and supporter of Republican presidential nominee

Donald Trump.[19]

    At this time, any would-be voters in the storm-affected areas will have to

make their way through the extensive flooding and damage caused by the storm in

order to register by the October 11 deadline.  And even if those would-be voters

risk their safety to register, they will likely encounter shuttered government offices

---

[16] Eli Yokley, *Florida Democrats Call on Rick Scott to Extend Voter Registration Deadline*, Morning Consult (Oct. 7, 2016), https://morningconsult.com/alert/florida-democrats-call-scott-extend-voter-registration-deadline/ (last visited Oct. 8, 2016).

[17] *Gov. Scott Says No to Extending Florida Voter-Registration Deadline*, Miami Herald, (Oct. 6, 2016), http://miamiherald.typepad.com/nakedpolitics/2016/10/gov-scott-says-no-to-extending-florida-voter-registration-deadline.html (last visited Oct. 8, 2016).

[18] Reena Flores, *Rick Scott Won't Extend Florida Voter Registration Because of Hurricane*, CBS News (Oct. 7, 2016), http://www.cbsnews.com/news/rick-scott-wont-extend-florida-voter-registration-because-of-hurricane/ (last visited Oct. 8, 2016).

[19] *See* Matt Dixon & Marc Caputo, *Scott Won't Extend Voter Registration Deadline as Hurricane Matthew Approaches*, Politico (Oct. 6, 2016), http://www.politico.com/states/florida/story/2016/10/scott-wont-extend-voter-registration-deadline-as-hurricane-matthew-approaches-106172#ixzz4MWytl0yG (last visited Oct. 8, 2016).

and unattended postboxes.[20]  Likewise, third party voter registration organizations that have gathered and are currently in possession of voter registration applications are unable to deliver those applications to election officials due to the devastation caused by the storm.

Finally, although Governor Scott pointed to "early voting" as a mitigating factor, that misses the point.  Voters cannot vote early if they are unable to register. And, as explained in more detail below, additional time is necessary to ensure that counties are able to submit their early voting plans.  Moreover, Florida's election officials will need to make adjustments to early voting procedures and locations in storm-affected areas and communicate those changes to residents, including the many Democratic voters in storm-affected areas.  Implementing those changes will require additional effort and time in light of the evacuations, closures, and other impediments directly caused by Hurricane Matthew.

Under these extraordinary circumstances, Defendants' refusal to extend the voter registration deadline violates the fundamental voting rights of Floridians.

Unfortunately, this is not the first time that the courts have been asked to intervene because Governor Scott and his administration have, inadvertently or

---

[20] Elliot Hannon, *Florida Governor Refuses to Extend Next Week's Voter Registration Deadline Despite Catastrophic Hurricane*, Slate (Oct. 6, 2016), http://www.slate.com/blogs/the_slatest/ 2016/10/06/florida_governor_refuses_to_extend_voter_registration_deadline_despite_ hurricane.html (last visited Oct. 8, 2016); *Postal Service Prepping for Hurricane Matthew*, WJHG (Oct. 6, 2016), http://www.wjhg.com/content/news/Postal-service-prepping-for- Hurricane-Matthew-396212161.html (last visited Oct. 8, 2016).

intentionally, disenfranchised Florida voters. *See United States v. Florida*, 870 F. Supp. 2d 1346, 1347 (N.D. Fla. 2012) (systematic purge of voter registrations); *Mi Familia Vota Educ. Fund v. Detzner*, 891 F. Supp. 2d 1326, 1334 (M.D. Fla. 2012) (failure to obtain preclearance of certain changes in standards, practices, and procedures affecting voting in five counties covered by Act).

## III.   ARGUMENT

### A.   Preliminary Injunction Standard

"A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief."  *Scott v. Roberts*, 612 F.3d 1279, 1289-90 (11th Cir. 2010). "To obtain such relief, the moving party must show (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest."  *GeorgiaCarry.org v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015).

### B.   Plaintiff Is Likely To Succeed On The Merits of Its Claims.

#### 1.   Defendants' Actions Impose A Severe Burden on The Right To Vote Without Advancing Any State Interest.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is

undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Accordingly, election laws burdening that fundamental right are subject to searching judicial scrutiny.

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court laid out a "flexible standard" to resolve constitutional challenges to state election laws that burden voting rights. *See Anderson*, 460 U.S. at 789.  "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights."  *Burdick*, 504 U.S. at 433-34 (quotation marks and citation omitted). When a regulation subjects the right to vote to a "severe" restriction, the restriction "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992).  Less severe burdens remain subject to balancing.  But "[h]owever slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89).

Here, if the October 11 voter registration deadline is not extended, then thousands and potentially tens of thousands of Floridians will be completely

disenfranchised.  Many have been required to evacuate ahead of Hurricane

Matthew, numerous government offices where they *could* register have been

closed, and postal service has been suspended.  Thus, many Floridians who would

have registered to vote last week were unable to do so.  And, by the time affected

residents return to their homes and pick their way through storm-ravaged streets to

election offices or post offices, it will be too late for them to register under the

current deadline.

"[T]he basic truth [is] that even one disenfranchised voter—let alone several

thousand—is too many[.]"  *League of Women Voters of N.C. v. N. Carolina*

("*LOWV*"), 769 F.3d 224, 244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735

(2015).  As a result, courts routinely hold that laws precluding citizens from voting

impose severe burdens on core constitutional rights.

For example, in *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006), the

Sixth Circuit found a "severe" burden where unreliable punch card ballots and

optical scan systems resulted in thousands of uncounted votes.  *Id.* at 661-62.

Similarly, in 2006, a federal district court enjoined state officials in Ohio

from enforcing amendments to the Ohio Elections Code.  *See Project Vote v.

Blackwell*, 455 F. Supp. 2d 694, 709 (N.D. Ohio 2006).  The amendments imposed

11

several requirements upon civic organizations that encouraged Ohio citizens to "get out and vote" and assisted new voters in the registration process. *Id*. at 698.[21]

The court granted plaintiff's requested injunction, holding that the requirements created "barriers" to registration that were "problematic from a constitutional standpoint," because they differentiated between voter registration workers without a rational basis and were "not a uniform and nondiscriminatory attempt to protect the integrity of the electoral process." *Id*. at 703-04, 709.  In so holding, the court specifically noted that "historically, the primary focus of voter registration drives has been low- and moderate-income, minority, and other disenfranchised communities, as well as the disabled." *Id*. at 699.

More recently, in *Northeastern Ohio Coalition for the Homeless v. Husted* ("*NEOCH*"), 696 F.3d 580 (6th Cir. 2012), the court held that disqualification of thousands of Ohio provisional ballots because they were cast in the correct polling location but wrong precinct in multiple-precinct polling locations constituted a "substantial" burden on provisional voters. *See id*. at 597.  The court reached that

---

[21] Specifically, before any person compensated for providing assistance to voters could provide such assistance, he or she was required to pre-register with the Secretary of State, complete an online training, and submit a "sworn affirmation" that such pre-registration and training were completed. *Id*. at 699.  Additionally, any person who registered another person to vote was required to personally return the voter's registration card, either by putting it in the mail himself or herself or delivering it to the Secretary of State or an Ohio elections office. *See id*. at 702. Anyone who was "compensated" for registering voter was required to identify his or her name, address, and employer name on the voter's registration form.  *See id*.  Voter registration workers who failed to comply were subject to felony criminal charges and penalties.  *See id*. at 705.

conclusion even though such ballots historically constituted less than 0.248% of all votes cast.  *See id.* at 593.

Lastly, in *One Wisconsin Institute, Inc. v. Thomsen*, No. 15-cv-324-jdp, 2016 WL 4059222 (W.D. Wis. July 29, 2016), the court found a severe burden where about 100 otherwise qualified voters were disenfranchised because of Wisconsin's voter identification law.  *See id.* at *2.

Here, Defendants' refusal to extend the October 11 voter registration deadline will result in voters' automatic and total disenfranchisement.  That sort of categorical denial of the right to vote plainly amounts to a severe burden on the franchise.  *See, e.g.*, *Ayers-Schaffner v. DiStefano*, 860 F. Supp. 918, 921 (D.R.I.), aff'd, 37 F.3d 726 (1st Cir. 1994) ("A complete denial of the right to vote is a restriction of the severest kind."); *see also NEOCH*, 696 F.3d at 585-87 ("summary" and "automatic" nature of disqualification of right-place, wrong-precinct ballots suggests burden on right to vote is "substantial").

Given the likelihood of total disenfranchisement for thousands of Floridians, Defendants must come forward with an interest that is "sufficiently weighty" to justify enforcing the October 11 deadline, and show that the October 11 deadline is narrowly drawn to further that interest.  *Norman*, 502 U.S. at 288-89.  In this case, however, the State has asserted *no* valid justification for its arbitrary refusal to extend the deadline.

13

First, contrary to the Governor's assertion that "everybody" had enough time to register before Hurricane Matthew,[22] state law allows voters to register *until* October 11.  Hurricane Matthew unexpectedly wiped out the last week of registration, when tens of thousands of people usually register.  *See* Elias Decl., Ex. A.  The suggestion that Floridians living in storm-affected areas should be punished because a natural disaster prevented them (but not other Floridians) from taking full advantage of the voter registration period is both offensive and illogical.

Second, Governor Scott's claim that there is no need to extend the registration deadline because of the existence of "early voting, absentee voting, and [voting on] Election Day"[23] is, with all due respect, a non-sequitur.  Those who have been prevented from registering cannot utilize *any* of these forms of voting because registration is a prerequisite to voting.

Third, and finally, it goes without saying that Governor Scott's appeal to naked partisanship ("this is politics") cannot justify disenfranchisement of thousands of Florida voters.[24]

Simply put, Defendants have not and cannot offer any valid reason for refusing to extend the registration deadline by one additional week under these

---

[22] *Gov. Scott Says No to Extending Florida Voter-Registration Deadline*, Miami Herald, (Oct. 6, 2016), http://miamiherald.typepad.com/nakedpolitics/2016/10/gov-scott-says-no-to-extending-florida-voter-registration-deadline.html (last visited Oct. 8, 2016).
[23] *See id*.
[24] Reena Flores, *Rick Scott Won't Extend Florida Voter Registration Because of Hurricane*, CBS News (Oct. 7, 2016), http://www.cbsnews.com/news/rick-scott-wont-extend-florida-voter-registration-because-of-hurricane/ (last visited Oct. 8, 2016).

circumstances, let alone a reason sufficient to justify disenfranchising thousands of Floridians. Plaintiff is therefore likely to prevail on Count I of its Complaint.

### 2. Defendants' Actions Violate The Equal Protection Clause.

Hurricane Matthew did not affect the entirety of the State of Florida equally. While many Florida citizens living on or near the Atlantic coast were forced to evacuate, others were able to remain in their homes during the storm. Similarly, while government offices in storm-affected areas were closed ahead of the storm, offices in many other areas remained open. As a practical matter, that means that Floridians in the storm's path will be prevented from registering by October 11, while those who are fortunate enough to live further inland will not face the same impediments to meeting that deadline. It follows that the October 11 deadline, if not extended, will treat similarly situated voters differently by unfairly and arbitrarily favoring inland voters over coastal voters.

Defendants' refusal to extend the October 11 deadline therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. As the Supreme Court has explained, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, *by later arbitrary and disparate treatment, value one person's vote over that of another*." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (emphasis added).

But that is precisely what Defendants propose to do here: enforce the October 11 deadline throughout the entire State, without regard to a massive storm that makes the deadline unreasonable in coastal areas, thereby resulting in "arbitrary and disparate treatment" of similarly situated voters based on nothing more than the happenstance of their residences.

Here again, Plaintiff's claim is evaluated under the flexible standard of the *Anderson-Burdick* test. *See Ohio Democratic Party v. Husted*, No. 16-3561, 2016 WL 4437605, at *4 (6th Cir. Aug. 23, 2016). Governor Scott's refusal to extend the voter registration deadline to account for the destruction wrought by Hurricane Matthew will result in the disenfranchisement of thousands of voters. That severe burden on the fundamental right to vote cannot be justified by the minor administrative inconvenience (assuming any such inconvenience even exists) of extending the October 11 deadline to October 18. Nor can it be justified by any desire by Governor Scott to play "politics" with Floridians' fundamental rights. Plaintiff is therefore likely to prevail on Count II of its Complaint.

### 3.       Defendants' Actions Violate The Voting Rights Act.

Section 2 of the Voting Rights Act "prohibits any State or political subdivision from imposing any electoral practice which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." *Georgia State Conference of NAACP v. Fayette Cnty. Bd. of*

*Comm'rs*, 775 F.3d 1336, 1342 (11th Cir. 2015) (quoting *Perry v. Perez*, 132 S. Ct. 934, 940 n.1 (2012) (per curiam)).  "[T]he critical question in a Section 2 claim is whether the use of a contested electoral practice or structure results in members of a protected group having less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Thornburg v. Gingles*, 478 U.S. 30, 63 (1986).  Under Section 2, as amended in 1982, a violation can be shown without proving discriminatory intent.  *See Johnson v. Gov. of St. of Florida*, 405 F.3d 1214, 1227 (11th Cir. 2005) (citing *Chisom v. Roemer*, 501 U.S. 380, 383-84 (1991)).

Here, the areas affected by Hurricane Matthew include substantial populations of minority voters, including African Americans and Latinos. Minority voters in Florida are disproportionately likely to register in the days immediately preceding the registration deadline.[25]  Given the ongoing effects of discrimination, there remain significant and continuing disparities between these minority voters and other members of the electorate, including disparities in

---

[25] *See, e.g.*, Zachary Roth & Alexandra Jaffe, *Florida Gov. Rick Scott Under Fire for Voter Registration Decision*, NBC News (Oct. 7, 2016), http://www.nbcnews.com/politics/elections/florida-gov-rick-scott-under-fire-voter-registration-decision-n661796 (Dan Smith, University of Florida political science professor and Florida election data expert, describing Floridians who register near the deadline: "'It's a whole swath of individuals, many of them are going to be lower socioeconomic, tend to be younger *and tend to be minority*. And as a result, they disproportionately do register as either Democrats or no-party affiliates and we know that just by going back and looking at previous records,' Smith said.") (emphasis added); Matt Dixon & Marc Caputo, *Scott Won't Extend Voter Registration Deadline As Hurricane Matthew Threatens State*, Politico (Oct. 6, 2016), http://www.politico.com/states/florida/story/2016/10/scott-wont-extend-voter-registration-deadline-as-hurricane-matthew-approaches-106172#ixzz4MWytl0yG (similar).

socioeconomic conditions and access to transportation.  Those disparities, in turn,

mean that minority voters in storm-affected areas will have more difficulty

overcoming the barriers to registration caused by Hurricane Matthew relative to

other members of the electorate.

Courts determining whether a law impermissibly denies or abridges the right

to vote under Section 2 look to the "totality of circumstances."  52 U.S.C. § 10301.

In particular, the Supreme Court has found that the Section 2 analysis should be

guided by the so-called Senate Factors.  *See Gingles*, 478 U.S. at 37-38.  Those

factors are:

> 1. the extent of any history of official discrimination in
> the state or political subdivision that touched the right of
> the members of the minority group to register, to vote, or
> otherwise to participate in the democratic process;
>
> 2. the extent to which voting in the elections of the state
> or political subdivision is racially polarized;
>
> 3. the extent to which the state or political subdivision
> has used unusually large election districts, majority vote
> requirements, anti-single shot provisions, or other voting
> practices or procedures that may enhance the opportunity
> for discrimination against the minority group;
>
> 4. if there is a candidate slating process, whether the
> members of the minority group have been denied access
> to that process;
>
> 5. the extent to which members of the minority group in
> the state or political subdivision bear the effects of
> discrimination in such areas as education, employment

and health, which hinder their ability to participate
effectively in the political process;

6. whether political campaigns have been characterized
by overt or subtle racial appeals;

7. the extent to which members of the minority group
have been elected to public office in the jurisdiction. . . .

[8.] whether there is a significant lack of responsiveness
on the part of elected officials to the particularized needs
of the members of the minority group.

[9.] whether the policy underlying the state or political
subdivision's use of such voting qualification,
prerequisite to voting, or standard, practice or procedure
is tenuous.

*Id.* (quoting S. Rep. No. 97–417, at 28-29 (1982)) (internal quotation marks

omitted).  Those factors weigh in favor of Plaintiff in this case.

The history of official discrimination in Florida (factor 1) is well

documented, as is racial polarization in voting patterns (factor 2).  *See, e.g.*,

*DeGrandy v. Wetherell*, 794 F. Supp. 1076, 1079 (N.D. Fla. 1992) (detailing the

"longstanding general history of official discrimination against minorities" that has

"influenced Florida's electoral process" and the existence of "racially polarized

voting "throughout Florida").  Similarly well-documented are the socioeconomic

disparities affecting Florida's minority voters.  *See Johnson v. Bush*, No. 00-3542-

CIV, 2002 WL 34355950, at *2 (S.D. Fla. Apr. 19, 2002).

Moreover, Governor Scott has displayed a callous attitude towards minority voters in storm-affected areas, thereby revealing a "significant lack of responsiveness" to those groups (factor 8). Minority citizens have been and will be disproportionately affected by the storm given the historical disparities above. Other facts make clear that the burdens of Hurricane Matthew will fall disproportionately on minorities; for example, Orange County, where government operations were closed on Friday, has a higher percentage of African American and Latino citizens than Florida generally.[26] And the fact that minority voters tend to register at higher rates closer to the voter registration deadline will only magnify these disenfranchising effects.

Nevertheless, Defendants have refused to extend the voter registration deadline, even modestly, to accommodate minorities affected by the storm. Their excuse for that inaction—in essence, that everyone should have registered at least one week *before* the actual deadline—is "tenuous" at best (factor 9).

While Section 2 cases can be fact intensive, Plaintiff here is likely to succeed on the merits. Unless enjoined, Defendants' actions will disproportionately affect minority groups, stripping them of their ability to

---

[26] *Hurricane Matthew Closings, Reopenings in Central Florida*, Orlando Sentinel, http://www. orlandosentinel.com/weather/hurricane/; U.S. Census Bureau, QuickFacts, *available at* http://www.census.gov/quickfacts/table/PST045215/12,12095 (comparing statistics of Orange County and Florida generally).

participate in the upcoming election.  Plaintiff is therefore likely to prevail on

Count III of its Complaint.

### C.     Plaintiff Satisfies The Other Preliminary Injunction Factors.

#### 1.     An Injunction Is Necessary to Avoid Irreparable Harm.

There is no genuine dispute that the harm threatened here is irreparable.

If Florida voters are prevented from registering as a result of Hurricane Matthew

and Defendants refuse to extend the registration deadline, there is no way to cure

that disenfranchisement.  "[O]nce the election occurs, there can be no do-over and

no redress."  *LOWV*, 769 F.3d at 247.  Thus, courts have long recognized that

when an "abridgment to the voters' constitutional right to vote" is imminent,

"irreparable harm is presumed and no further showing of injury need be made."

*Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); *see also*

*Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("*OFA*")

(abridgement of right to vote constitutes irreparable harm); *Council of Alt. Political*

*Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997) (same); *Williams v. Salerno*,

792 F.2d 323, 326 (2d Cir. 1986) (same).

#### 2.     The Balance of Hardships Weighs in Favor of an Injunction.

It is equally clear that the balance of hardships favors Plaintiff and weighs in

favor of issuing emergency injunctive relief.  Beyond minor administrative

inconvenience, it is difficult to see how Defendants would suffer any harm if they were required to continue accepting registration applications through October 18.

On the other side of the ledger, if deadline is not extended, then thousands of voters in a critical swing state risk total disenfranchisement in a hotly contested election. Under those circumstances, equity plainly favors Plaintiff. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (stating "administrative convenience" cannot justify the deprivation of a constitutional right).

Defendants may argue that Plaintiff is understating the burdens of extending the deadline. But that argument is belied by the facts. Many other states have adjusted election and voter registration procedures in analogous circumstances. For example, in 2005, in the wake of Hurricane Katrina, Governor Blanco of Louisiana used executive powers to postpone several elections (and their respective qualifying periods). *See* La. Exec. Order No. KBB 2005-36, *available at* http://www.doa.louisiana.gov/osr/other/kbb06-02.htm.

More recently, in 2012, Hurricane Sandy struck the Mid-Atlantic coast days before the general election. To preserve the rights of voters affected by Hurricane Sandy, New Jersey, New York, and Connecticut postponed deadlines and took other common-sense measures to prevent disenfranchisement.[27]

---

[27] In New Jersey, by executive order, any voter who was displaced was designated an "overseas voter" and permitted to submit a mail-in ballot. Directive Regarding Email Voting and Mail-in Ballots for Displaced Voters, *available at* http://nj.gov/state/elections/2012-results/directive-

In this very election, South Carolina and Georgia have taken steps to address the effect of Hurricane Matthew on upcoming registration deadlines.  Indeed, South Carolina voluntarily extended its registration deadline to accommodate those affected by the storm—precisely the relief Plaintiff seeks here—and Georgia is encouraging its residents to register online—an option that is unavailable in Florida.  There is no good reason why Florida cannot and should not follow suit.

### 3.   An Injunction Is in The Public Interest.

The public has a paramount interest in elections where every eligible resident may cast an effective vote.  *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also LOWV*, 769 F.3d at 248 ("[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *OFA*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible.").  The affected voters are those whose lives have already been interrupted (or worse) by Hurricane Matthew.  Under the circumstances, an injunction allowing these voters to participate in the upcoming election would only

---

email-voting.pdf.  The order also extended the deadline for those mail-in ballots.  *Id.*  In Connecticut, the October 30 voter registration deadline was postponed until November 1, a mere five days before the general election.  In New York, any voter registered in a federally-declared disaster was allowed to vote by affidavit at any poll site in New York.  *Governor Cuomo Signs Executive Order to Facilitate Voting for New Yorkers Who Were Affected by Hurricane Sandy*, New York State (Nov. 5, 2012), https://www.governor.ny.gov/news/governor-cuomo-signs-executive-order-facilitate-voting-new-yorkers-who-were-affected-hurricane (last visited Oct. 8, 2016).

promote the public interest.  As discussed above, other states have made significant efforts in the wake of Hurricane Matthew and other natural disasters to ensure that their citizens are able to vote.  Their actions make clear that the modest relief sought here serves the public interest.

**D.    The Court Should Extend The Deadline for Counties to Submit Early Voting Plans to The Extent Necessary.**

Finally, for all the reasons set out above, the Court should also order Defendants to extend the deadline for Florida counties to submit early voting plans to the extent necessary.

Under Florida law, the county supervisor of elections must designate each early voting site by no later than the 30th day prior to an election (i.e., October 9) and designate an early voting area at each such site.  *See* Fla. Stat. § 101.657(1)(b). The address of each early voting site and available early voting hours must be provided to the Division of Elections by that same deadline.  *See id.*

Here, given that government offices in affected areas were closed on Thursday and Friday, and given the continuing fallout from Hurricane Matthew, it is unclear (but unlikely) that all early voting plans will be timely submitted by today's deadline.  It is also likely that some previously designated early voting sites will be rendered inaccessible by storm damage.  Thus, Florida's election officials will need to make adjustments to early voting procedures and locations and communicate those changes to affected residents.  Those changes will directly

affect Democratic voters in areas hit by Hurricane Matthew.  Accordingly, the Court should extend by one week—to October 16—the deadline for the designation of early voting sites and hours.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court enter a preliminary injunction requiring Defendants, their officers, employees, and agents, all persons acting in active concert or participation with the Defendants, or under any Defendants' supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, to extend the deadline for delivery of voter registration applications to October 18, and to extend the deadline for submission of early voting plans to October 16.

Dated: October 9, 2016                    Respectfully submitted,

                                          /s/ Mark Herron
                                          Mark Herron
                                          Fl. Bar. No. 199737
                                          mherron@lawfla.com
                                          Robert J. Telfer III
                                          rtelfer@lawfla.com
                                          **MESSER CAPARELLO**
                                          2618 Centennial Place
                                          Tallahassee, FL 32308
                                          Telephone:  (850) 222-0720
                                          Facsimile:  (850) 558-0659

                                          and

Marc E. Elias
D.C. Bar No. 44207
(Admitted *Pro Hac Vice*)
MElias@perkinscoie.com
Kevin J. Hamilton
Wash. Bar No. 15648
(*Pro Hac Vice* Application Pending)
KHamilton@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone:  (202) 654-6200
Facsimile:  (202) 654-6211

*Counsel for Plaintiff*

# <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties via electronic mail; Adam S. Tanenbaum, General Counsel for The Secretary of State, adam.tanenbaum@dos.myflorida.com, William Spicola, General Counsel for Governor, Rick Scott, william.spicola@eog.myflorida.com

*/s/*

**Mark Herron**

## <u>CERTIFICATE OF SERVICE</u>

### [MESSER CAPARELLO TO TAILOR CERTIFICATE OF SERVICE BASED ON N.D. FLORIDA'S REQUIREMENTS]

     I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties who have requested notice via the electronic filing system of the Northern District of Florida on the date appearing on the Clerk's CM/ECF electronic docket (or on the following day depending on the recipient's CM/ECF settings):

     [Opposing Counsel]

**[NAME]**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FLORIDA DEMOCRATIC PARTY,<br><br>        Plaintiff,<br><br>        v.<br><br>RICHARD SCOTT, in his official capacity as Governor of the State of Florida, and KEN DETZNER, in his official capacity as Secretary of State of the State of Florida,<br><br>        Defendants. | CASE NO. 4:16-cv-626 |

## DECLARATION OF MARC E. ELIAS

I, Marc E. Elias, do hereby state as follows:

1.     I am an attorney and I represent Plaintiff Florida Democratic Party in this matter.

2.     I have personal knowledge regarding the facts stated in this declaration, and I am competent to testify to the matters stated in this declaration.

3.     In 2012, Florida's voter registration deadline was October 9.

1

4.      The attached Voter Registration Monthly Report for October 2012 (Exhibit A) is a true and correct copy of records collected and maintained in the ordinary course of business by the Florida Department of State, Division of Elections.

I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand that they are made for use as evidence in court and subject to penalty for perjury.

Dated this 9th day of October, 2016, in Washington, D.C.


_____/s/ Marc E. Elias____
Marc E. Elias

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties via electronic mail; Adam S. Tanenbaum, General Counsel for The Secretary of State, adam.tanenbaum@dos.myflorida.com, William Spicola, General Counsel for Governor, Rick Scott, william.spicola@eog.myflorida.com

_____/s/_____

**Mark Herron**

Prepared by Florida Department of State - Division of Elections 11/16/2012

# Voter Registration Monthly Report
## October 2012

| COUNTY | PARTY AFFILIATION | | | | VOTER REGISTRATIONS | |
|---|---|---|---|---|---|---|
| | REPUBLICAN | DEMOCRAT | MINOR | NONE | NEW VALID | REMOVED |
| ALACHUA | 47,049 | 80,524 | 4,001 | 34,048 | 3,526 | 368 |
| BAKER | 6,148 | 6,836 | 199 | 1,074 | 235 | 20 |
| BAY | 56,621 | 35,320 | 2,541 | 19,203 | 1,739 | 290 |
| BRADFORD | 6,294 | 7,436 | 275 | 1,617 | 137 | 37 |
| BREVARD | 162,344 | 131,912 | 14,010 | 73,546 | 5,029 | 977 |
| BROWARD | 259,804 | 595,909 | 18,654 | 270,412 | 18,156 | 1,466 |
| CALHOUN | 1,645 | 5,966 | 71 | 639 | 72 | 12 |
| CHARLOTTE | 50,027 | 35,617 | 4,828 | 25,126 | 1,224 | 285 |
| CITRUS | 42,883 | 32,720 | 3,445 | 20,068 | 979 | 240 |
| CLAY | 73,597 | 31,946 | 3,841 | 23,921 | 1,613 | 250 |
| COLLIER | 93,760 | 45,301 | 4,390 | 39,396 | 2,462 | 372 |
| COLUMBIA | 14,597 | 16,250 | 991 | 4,441 | 355 | 72 |
| DESOTO | 4,760 | 8,563 | 297 | 2,772 | 230 | 51 |
| DIXIE | 2,789 | 6,130 | 280 | 1,028 | 94 | 16 |
| DUVAL | 208,660 | 242,251 | 17,773 | 95,086 | 8,680 | 1,039 |
| ESCAMBIA | 88,523 | 74,483 | 5,362 | 32,229 | 3,082 | 545 |
| FLAGLER | 25,798 | 24,663 | 1,882 | 17,540 | 903 | 154 |
| FRANKLIN | 1,711 | 4,864 | 124 | 567 | 53 | 17 |
| GADSDEN | 4,099 | 23,217 | 348 | 1,987 | 358 | 92 |
| GILCHRIST | 5,208 | 4,334 | 330 | 1,252 | 93 | 15 |
| GLADES | 1,987 | 3,600 | 189 | 866 | 52 | 31 |
| GULF | 3,314 | 4,989 | 120 | 700 | 55 | 23 |
| HAMILTON | 1,839 | 5,297 | 146 | 676 | 47 | 21 |
| HARDEE | 4,469 | 6,152 | 249 | 1,511 | 179 | 8 |
| HENDRY | 5,653 | 8,898 | 360 | 2,380 | 254 | 27 |
| HERNANDO | 49,139 | 45,211 | 5,049 | 24,253 | 1,048 | 269 |
| HIGHLANDS | 27,466 | 23,355 | 2,208 | 9,292 | 612 | 136 |
| HILLSBOROUGH | 246,872 | 311,782 | 9,587 | 186,824 | 14,084 | 1,066 |
| HOLMES | 4,140 | 6,290 | 145 | 1,009 | 126 | 22 |
| INDIAN RIVER | 44,613 | 27,175 | 3,260 | 19,045 | 1,221 | 198 |
| JACKSON | 8,462 | 17,887 | 326 | 2,404 | 289 | 53 |
| JEFFERSON | 2,414 | 6,259 | 204 | 643 | 87 | 15 |
| LAFAYETTE | 1,227 | 3,083 | 49 | 217 | 32 | 10 |
| LAKE | 89,684 | 68,048 | 8,127 | 37,174 | 2,494 | 429 |

Prepared by Florida Department of State - Division of Elections                    11/16/2012

# Voter Registration Monthly Report
## October 2012

| COUNTY | PARTY AFFILIATION | | | | VOTER REGISTRATIONS | |
|---|---|---|---|---|---|---|
| | REPUBLICAN | DEMOCRAT | MINOR | NONE | NEW VALID | REMOVED |
| LEE | 170,504 | 115,449 | 12,551 | 92,166 | 5,472 | 493 |
| LEON | 52,801 | 104,852 | 4,642 | 30,541 | 3,535 | 22 |
| LEVY | 10,368 | 10,594 | 1,558 | 2,744 | 302 | 31 |
| LIBERTY | 459 | 3,714 | 26 | 217 | 30 | 9 |
| MADISON | 2,622 | 8,221 | 260 | 935 | 104 | 16 |
| MANATEE | 90,320 | 68,615 | 6,183 | 45,507 | 2,658 | 412 |
| MARION | 95,866 | 82,935 | 10,969 | 34,394 | 2,502 | 472 |
| MARTIN | 51,849 | 27,190 | 5,562 | 17,771 | 910 | 179 |
| MIAMI-DADE | 379,785 | 578,470 | 19,298 | 345,805 | 26,801 | 2,595 |
| MONROE | 19,485 | 17,979 | 1,614 | 13,447 | 905 | 99 |
| NASSAU | 28,450 | 14,465 | 1,945 | 7,252 | 671 | 105 |
| OKALOOSA | 75,518 | 27,801 | 2,213 | 24,030 | 1,960 | 312 |
| OKEECHOBEE | 7,103 | 8,855 | 567 | 2,720 | 215 | 43 |
| ORANGE | 204,478 | 298,234 | 16,341 | 176,190 | 14,329 | 1,010 |
| OSCEOLA | 43,964 | 72,399 | 4,427 | 44,995 | 3,319 | 181 |
| PALM BEACH | 249,323 | 387,869 | 32,138 | 203,767 | 10,575 | 1,629 |
| PASCO | 120,888 | 108,227 | 16,679 | 65,540 | 3,667 | 740 |
| PINELLAS | 226,661 | 234,732 | 25,567 | 142,439 | 7,330 | 1,341 |
| POLK | 131,384 | 140,538 | 11,053 | 69,830 | 5,526 | 648 |
| PUTNAM | 14,477 | 22,317 | 1,013 | 6,219 | 485 | 112 |
| SANTA ROSA | 67,076 | 27,140 | 3,645 | 19,351 | 1,429 | 206 |
| SARASOTA | 122,058 | 88,270 | 8,627 | 59,358 | 3,107 | 640 |
| SEMINOLE | 110,955 | 94,825 | 8,183 | 65,098 | 5,237 | 281 |
| ST. JOHNS | 81,249 | 38,884 | 5,104 | 27,958 | 1,498 | 214 |
| ST. LUCIE | 56,155 | 75,547 | 6,481 | 37,715 | 2,305 | 451 |
| SUMTER | 36,992 | 22,933 | 3,327 | 10,966 | 769 | 124 |
| SUWANNEE | 9,019 | 12,618 | 1,091 | 2,359 | 197 | 79 |
| TAYLOR | 3,394 | 8,224 | 255 | 784 | 94 | 25 |
| UNION | 2,381 | 4,337 | 134 | 486 | 86 | 23 |
| VOLUSIA | 114,726 | 128,800 | 10,922 | 80,486 | 4,771 | 682 |
| WAKULLA | 6,071 | 9,815 | 592 | 2,091 | 250 | 34 |
| WALTON | 21,832 | 10,237 | 801 | 6,176 | 545 | 80 |
| WASHINGTON | 6,014 | 7,058 | 227 | 1,407 | 135 | 27 |
| **TOTALS** | **4,261,823** | **4,814,412** | **337,656** | **2,593,690** | **181,319** | **21,941** |

Prepared by Florida Department of State - Division of Elections                    11/16/2012

# Voter Registration Monthly Report
## October 2012

### TOTAL APPLICATIONS RECEIVED

| COUNTY | DHSMV | | MAIL | | PUBLIC ASSISTANCE | | DISABILITY/ C.I.L | | RECRUITERS | | PUB. LIB. | | 3rd Party Voter Registration Orgs. | | Completed at/Hand Delivered to SOE | | COUNTY TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ALACHUA | 304 | 8% | 1,008 | 27% | 13 | 0% | 2 | 0% | 9 | 0% | 134 | 4% | 1,599 | 43% | 664 | 18% | 3,733 |
| BAKER | 5 | 2% | 11 | 5% | 5 | 2% | 0 | 0% | 0 | 0% | 4 | 2% | 0 | 0% | 218 | 90% | 243 |
| BAY | 323 | 18% | 518 | 29% | 28 | 2% | 0 | 0% | 0 | 0% | 0 | 0% | 138 | 8% | 810 | 45% | 1,817 |
| BRADFORD | 28 | 20% | 35 | 25% | 2 | 1% | 0 | 0% | 0 | 0% | 2 | 1% | 2 | 1% | 73 | 51% | 142 |
| BREVARD | 969 | 18% | 1,296 | 25% | 33 | 1% | 0 | 0% | 0 | 0% | 154 | 3% | 1,195 | 23% | 1,637 | 31% | 5,284 |
| BROWARD | 2,018 | 11% | 7,162 | 38% | 61 | 0% | 3 | 0% | 4 | 0% | 879 | 5% | 6,383 | 34% | 2,437 | 13% | 18,947 |
| CALHOUN | 11 | 15% | 11 | 15% | 1 | 1% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 51 | 69% | 74 |
| CHARLOTTE | 440 | 34% | 197 | 15% | 8 | 1% | 0 | 0% | 0 | 0% | 20 | 2% | 214 | 17% | 406 | 32% | 1,285 |
| CITRUS | 281 | 28% | 271 | 27% | 0 | 0% | 0 | 0% | 0 | 0% | 45 | 4% | 151 | 15% | 271 | 27% | 1,019 |
| CLAY | 430 | 25% | 587 | 34% | 7 | 0% | 0 | 0% | 0 | 0% | 169 | 10% | 112 | 6% | 439 | 25% | 1,744 |
| COLLIER | 982 | 38% | 636 | 25% | 3 | 0% | 0 | 0% | 0 | 0% | 3 | 0% | 333 | 13% | 627 | 24% | 2,584 |
| COLUMBIA | 0 | 0% | 79 | 21% | 5 | 1% | 0 | 0% | 0 | 0% | 7 | 2% | 114 | 30% | 180 | 47% | 385 |
| DESOTO | 37 | 15% | 64 | 26% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 144 | 59% | 245 |
| DIXIE | 5 | 5% | 6 | 6% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 85 | 89% | 96 |
| DUVAL | 1,365 | 15% | 2,485 | 27% | 59 | 1% | 1 | 0% | 0 | 0% | 837 | 9% | 2,628 | 29% | 1,721 | 19% | 9,096 |
| ESCAMBIA | 949 | 29% | 938 | 29% | 11 | 0% | 3 | 0% | 0 | 0% | 15 | 0% | 759 | 23% | 556 | 17% | 3,231 |
| FLAGLER | 252 | 27% | 235 | 25% | 5 | 1% | 0 | 0% | 0 | 0% | 68 | 7% | 60 | 6% | 320 | 34% | 940 |
| FRANKLIN | 11 | 12% | 18 | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 63 | 68% | 92 |
| GADSDEN | 40 | 10% | 65 | 17% | 7 | 2% | 0 | 0% | 0 | 0% | 5 | 1% | 3 | 1% | 273 | 69% | 393 |
| GILCHRIST | 25 | 26% | 8 | 8% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1% | 0 | 0% | 63 | 65% | 97 |
| GLADES | 24 | 44% | 24 | 44% | 1 | 2% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 11% | 55 |
| GULF | 15 | 18% | 11 | 13% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1% | 3 | 4% | 55 | 65% | 85 |
| HAMILTON | 12 | 24% | 3 | 6% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 35 | 70% | 50 |
| HARDEE | 18 | 8% | 12 | 6% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 187 | 86% | 217 |
| HENDRY | 44 | 17% | 33 | 12% | 4 | 2% | 0 | 0% | 0 | 0% | 0 | 0% | 45 | 17% | 139 | 52% | 265 |
| HERNANDO | 288 | 26% | 280 | 25% | 1 | 0% | 0 | 0% | 0 | 0% | 13 | 1% | 172 | 16% | 349 | 32% | 1,103 |
| HIGHLANDS | 151 | 23% | 143 | 22% | 4 | 1% | 0 | 0% | 0 | 0% | 10 | 2% | 76 | 12% | 259 | 40% | 643 |
| HILLSBOROUGH | 2,227 | 15% | 3,872 | 26% | 45 | 0% | 1 | 0% | 0 | 0% | 881 | 6% | 4,509 | 30% | 3,342 | 22% | 14,877 |
| HOLMES | 0 | 0% | 24 | 17% | 14 | 10% | 0 | 0% | 0 | 0% | 1 | 1% | 20 | 14% | 83 | 58% | 142 |
| INDIAN RIVER | 311 | 24% | 164 | 12% | 2 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 216 | 16% | 626 | 47% | 1,319 |

Prepared by Florida Department of State - Division of Elections

11/16/2012

# Voter Registration Monthly Report
## October 2012

### TOTAL APPLICATIONS RECEIVED

| COUNTY | DHSMV | | MAIL | | PUBLIC ASSISTANCE | | DISABILITY/ C.I.L | | RECRUITERS | | PUB. LIB. | | 3rd Party Voter Registration Orgs. | | Completed at/Hand Delivered to SOE | | COUNTY TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JACKSON | 52 | 17% | 59 | 19% | 1 | 0% | 6 | 2% | 0 | 0% | 1 | 0% | 49 | 16% | 142 | 46% | 310 |
| JEFFERSON | 8 | 9% | 47 | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1% | 0 | 0% | 38 | 40% | 94 |
| LAFAYETTE | 7 | 21% | 4 | 12% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 22 | 67% | 33 |
| LAKE | 619 | 24% | 968 | 37% | 22 | 1% | 1 | 0% | 0 | 0% | 209 | 8% | 336 | 13% | 455 | 17% | 2,610 |
| LEE | 1,411 | 24% | 1,348 | 23% | 51 | 1% | 0 | 0% | 0 | 0% | 290 | 5% | 1,047 | 18% | 1,650 | 28% | 5,797 |
| LEON | 488 | 13% | 1,501 | 41% | 10 | 0% | 0 | 0% | 0 | 0% | 62 | 2% | 1,483 | 41% | 100 | 3% | 3,644 |
| LEVY | 86 | 26% | 75 | 23% | 2 | 1% | 0 | 0% | 0 | 0% | 0 | 0% | 44 | 13% | 121 | 37% | 328 |
| LIBERTY | 6 | 18% | 8 | 24% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 20 | 59% | 34 |
| MADISON | 8 | 7% | 9 | 8% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1% | 89 | 83% | 107 |
| MANATEE | 614 | 22% | 628 | 23% | 10 | 0% | 0 | 0% | 0 | 0% | 70 | 3% | 504 | 18% | 931 | 34% | 2,757 |
| MARION | 1,045 | 40% | 698 | 27% | 12 | 0% | 1 | 0% | 0 | 0% | 138 | 5% | 290 | 11% | 423 | 16% | 2,607 |
| MARTIN | 263 | 27% | 236 | 25% | 1 | 0% | 0 | 0% | 1 | 0% | 28 | 3% | 82 | 9% | 350 | 36% | 961 |
| MIAMI-DADE | 2,502 | 9% | 12,722 | 46% | 76 | 0% | 13 | 0% | 2 | 0% | 373 | 1% | 8,150 | 29% | 3,971 | 14% | 27,809 |
| MONROE | 193 | 21% | 216 | 23% | 1 | 0% | 0 | 0% | 0 | 0% | 35 | 4% | 243 | 26% | 248 | 26% | 936 |
| NASSAU | 170 | 24% | 182 | 26% | 1 | 0% | 0 | 0% | 0 | 0% | 136 | 19% | 53 | 8% | 160 | 23% | 702 |
| OKALOOSA | 569 | 26% | 544 | 25% | 12 | 1% | 0 | 0% | 0 | 0% | 44 | 2% | 56 | 3% | 937 | 43% | 2,162 |
| OKEECHOBEE | 24 | 11% | 46 | 20% | 9 | 4% | 0 | 0% | 0 | 0% | 0 | 0% | 25 | 11% | 121 | 54% | 225 |
| ORANGE | 2,193 | 15% | 5,159 | 36% | 80 | 1% | 18 | 0% | 0 | 0% | 1,086 | 8% | 4,324 | 30% | 1,361 | 10% | 14,221 |
| OSCEOLA | 578 | 16% | 783 | 22% | 8 | 0% | 1 | 0% | 0 | 0% | 108 | 3% | 1,060 | 30% | 1,013 | 29% | 3,551 |
| PALM BEACH | 1,114 | 10% | 3,958 | 35% | 26 | 0% | 7 | 0% | 1 | 0% | 270 | 2% | 3,673 | 33% | 2,212 | 20% | 11,261 |
| PASCO | 921 | 24% | 1,036 | 27% | 11 | 0% | 0 | 0% | 0 | 0% | 127 | 3% | 943 | 25% | 809 | 21% | 3,847 |
| PINELLAS | 1,800 | 23% | 1,816 | 23% | 8 | 0% | 5 | 0% | 1 | 0% | 375 | 5% | 1,826 | 23% | 2,125 | 27% | 7,956 |
| POLK | 1,085 | 19% | 2,069 | 35% | 30 | 1% | 0 | 0% | 37 | 1% | 158 | 3% | 0 | 0% | 2,485 | 42% | 5,864 |
| PUTNAM | 114 | 23% | 85 | 17% | 3 | 1% | 0 | 0% | 0 | 0% | 3 | 1% | 60 | 12% | 241 | 48% | 506 |
| SANTA ROSA | 394 | 26% | 369 | 24% | 7 | 0% | 0 | 0% | 0 | 0% | 26 | 2% | 47 | 3% | 671 | 44% | 1,514 |
| SARASOTA | 568 | 18% | 813 | 25% | 32 | 1% | 0 | 0% | 0 | 0% | 57 | 2% | 650 | 20% | 1,082 | 34% | 3,202 |
| SEMINOLE | 580 | 11% | 2,204 | 41% | 19 | 0% | 2 | 0% | 0 | 0% | 386 | 7% | 1,132 | 21% | 1,028 | 19% | 5,351 |
| ST. JOHNS | 603 | 38% | 460 | 29% | 10 | 1% | 0 | 0% | 0 | 0% | 107 | 7% | 77 | 5% | 333 | 21% | 1,590 |
| ST. LUCIE | 360 | 15% | 706 | 29% | 11 | 0% | 0 | 0% | 0 | 0% | 44 | 2% | 440 | 18% | 902 | 37% | 2,463 |
| SUMTER | 331 | 42% | 79 | 10% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 1% | 15 | 2% | 361 | 46% | 792 |

Prepared by Florida Department of State - Division of Elections

11/16/2012

# Voter Registration Monthly Report
## October 2012

| COUNTY | DHSMV | | MAIL | | PUBLIC ASSISTANCE | | DISABILITY/ C.I.L | | RECRUITERS | | PUB. LIB. | | 3rd Party Voter Registration Orgs. | | Completed at/Hand Delivered to SOE | | COUNTY TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | TOTAL APPLICATIONS RECEIVED | | | | | | | | | | | |
| SUWANNEE | 59 | 28% | 57 | 27% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 15 | 7% | 79 | 38% | 210 |
| TAYLOR | 20 | 21% | 16 | 17% | 2 | 2% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 58 | 60% | 96 |
| UNION | 5 | 5% | 13 | 14% | 1 | 1% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 74 | 80% | 93 |
| VOLUSIA | 917 | 19% | 1,499 | 30% | 16 | 0% | 1 | 0% | 0 | 0% | 691 | 14% | 1,275 | 26% | 529 | 11% | 4,928 |
| WAKULLA | 33 | 12% | 75 | 28% | 3 | 1% | 0 | 0% | 0 | 0% | 2 | 1% | 16 | 6% | 136 | 51% | 265 |
| WALTON | 149 | 26% | 37 | 7% | 39 | 7% | 0 | 0% | 0 | 0% | 88 | 15% | 23 | 4% | 233 | 41% | 569 |
| WASHINGTON | 39 | 28% | 8 | 6% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1% | 1 | 1% | 89 | 64% | 138 |
| **TOTALS** | **31,493** | **17%** | **60,729** | **32%** | **833** | **0%** | **65** | **0%** | **55** | **0%** | **8,171** | **4%** | **46,672** | **25%** | **41,718** | **22%** | **189,736** |