# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**FLORIDA DEMOCRATIC PARTY,**

    *Plaintiff*,

v.     Case No. 4:16cv626-MW/CAS

**RICHARD SCOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF FLORIDA, AND KEN DETZNER, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE STATE OF FLORIDA,**

    *Defendant*.

_____/

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). That right is no less sacrosanct for aspiring eligible voters than it is for current eligible voters.

This case involves the upcoming election. Florida's voter registration deadline for the 2016 election cycle is currently set for Tuesday, October 11, 2016. For aspiring eligible voters, failing to register by that date effectively forecloses the right to vote in

1

the 2016 election. Just five days before that deadline, however, Hurricane Matthew bore down and unleashed its wrath on the State of Florida. Life-threatening winds and rain forced many Floridians to evacuate or, at a minimum, hunker down in shelters or their homes. Like Hurricane Matthew, the voter registration deadline also approached and bore down on the State of Florida. Citing the impending Hurricane, many urged the Governor of Florida, Defendant Rick Scott, to extend the deadline. But Defendant Scott demurred, asserting instead that Floridian's had other avenues to ensure that their right to vote was protected.

Plaintiff brought this case, arguing that Defendants refusal to extend the registration deadline will unconstitutionally burden the rights of Florida voters. Specifically, Plaintiff seeks an injunction (and, in the interim, a temporary restraining order, ECF No. 4), enjoining Defendants from enforcing the October 11 voter registration deadline. ECF No. 3, at 21.

I

Before this Court reaches the merits, a few housekeeping matters must be addressed.

The first is standing, "as it is a threshold matter required for a claim to be considered by the federal courts." *Via Mat Int'l*

*S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006). Associations or organizations, in certain scenarios, have standing to assert claims based on injuries to itself or its members if that organization or its members are affected in a tangible way. *See United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996). More specifically, organizations can "enforce the rights of its members 'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Arcia v. Fl. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

As one of my colleagues held in another election case, political parties have standing to assert, at least, the rights of its members who will vote in an upcoming election. *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078–79 (N.D. Fla. 2004) (Hinkle, J.). That was so even though the political party could not identify *specific* voters that would be affected; it is sufficient that some in-

evitably would. Here too, Plaintiff need not identify *specific* aspiring eligible voters who intend to register as Democrats and who will be barred from voting; it is sufficient that some inevitably will. Plaintiff thus has standing.

Second, this Court must address whether Defendant Scott and Defendant Detzner are the proper parties to be sued in this case. It is well-established that while a state may not be sued unless it waives its sovereign immunity or that immunity is abrogated by Congress, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000), that a suit alleging a constitutional violation against a state official in his official capacity for prospective injunctive relief is not a suit against the state and, therefore, does not violate the Eleventh Amendment, *Ex Parte Young*, 209 U.S. 123, 161 (1908). That is because "[a] state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).

Here, Plaintiff seeks prospective injunctive relief against the Governor and the Secretary of State in their official capacity. This Court will address Defendant Detzner first. Florida law establishes that, as Secretary of State, Defendant Detzner is the

4

"chief election officer" for the State of Florida. § 97.012, Fla. Stat. (2016). Thus, Defendant Detzner is vested with the power to issue orders directing compliance with the election code or prohibiting violations thereof. And because "[h]is power by virtue of his office sufficiently connect[s] him with the duty of enforc[ing]" the election laws, *Ex Parte Young*, 209 U.S. at 161, he is a proper party here. *Cf Grizzle*, 634 F.3d at 319 (holding that Georgia Secretary of State was proper party in voting case).

But that does not apply equally to Defendant Scott. Plaintiff implies that Defendant Scott, as Governor, had the authority to extend the voter registration deadline. ECF No. 5, at 3. But it appears that Defendant Scott lacked the authority to extend the deadline. Florida law cloaks the Governor with general emergency management powers. § 252.36, Fla. Stat. (2016). But courts cannot use tunnel vision when construing statutes; rather, statues must be considered as a whole. *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94 (1993). And in the event of an emergency or disaster, the Governor is authorized "to suspend or delay any election." § 101.733, Fla. Stat. (2016). That does not imply the Governor is authorized to extend the voter registration. In fact, it implies the opposite. *See O'Melveny*

& *Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994) (referencing the canon "*Inclusio unius, exclusion alterius*"). Furthermore, specific statutes prevail over general ones. *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932). Thus, because Defendant Scott's office did not "connect[] him with the duty of enforc[ing]" a voter registration extension, *Ex Parte Young*, 209 U.S. at 161, he does not appear to be a proper party here.

## II

Under Civil Rule of Procedure 65(1)(1)(A), a court may issue a temporary restraining order only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." This Court must scrupulously honor Rule 65 requirements and thus it would be improper to issue a temporary restraining order absent compliance. Temporary restraining orders "have the effect of merely preserving the status quo rather than granting most or all of the substantive relief requested" by a plaintiff in a complaint. *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).

For a plaintiff to be entitled to a temporary restraining order, it must show "(1) a substantial likelihood of success on the

merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the [defendants]; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). While all of these elements must be established, none is controlling; this Court must instead consider these elements and the strength of the showing made as to each of them *together*, and a strong showing of (for instance) likelihood of success on the merits may compensate for a relatively weak showing of public interest. *See Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ., & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).[1]

The right to vote is a "precious" and "fundamental" right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966). Voting is, indisputably, a right "'of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). State and local

---

[1] Decisions of the Fifth Circuit prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

7

laws that unconstitutionally burden that right are impermissible. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 42, 41 (2008).

But that does not mean the right to vote is absolute. Rather, states retain the power to regulate their own elections. *Burdick*, 504 U.S. at 433 (citations omitted). Election laws almost always burden the right to vote. *See id.* ("Election laws will invariably impose some burden upon individual voters."). Some of these regulations must be substantial to ensure that order rather than chaos accompanies our democratic process. *Id.*

Not every voting regulation, however, is subject to strict scrutiny. Rather, courts considering a challenge to state election laws "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). "This standard is sufficiently flexible to accommodate the complexities of state election regulations while also

protecting the fundamental importance of the right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). When voting rights are subjected to "severe" restrictions, the regulation at issue "must be 'narrowly drawn to advance a compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). If the right to vote is not burdened at all, then rational basis review applies. *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012). But in the majority of cases where voting rights are subject to less-severe burdens, the State's interests often—but not always—are sufficient to justify the restrictions. *Anderson*, 460 U.S. at 788. In those cases, "[h]owever slight the burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) (quotation omitted).

    Our starting point is to look at whether and to what extent Florida's statutory framework burdens the right to vote. Under Florida's statutory framework, there is no provision that extends the voter registration deadline in the event of an emergency such as provided for a suspension or delay of the election date. Literally, in excess of a hundred thousand aspiring eligible Florida

9

voters were likely to have registered to vote in the final week of voter registration. ECF No. 5, at 2. Hurricane Matthew not only forced many of those voters to evacuate the state, but also foreclosed the only methods of registering to vote: in person or by mail.[2] Because those aspiring eligible voters could not register, they could not vote in the upcoming election. As a result, Florida's statutory framework completely disenfranchises thousands of voters, and amounts to a severe burden on the right to vote.

It has been suggested that the right to vote is not severely burdened because other opportunities to vote are available. For example, voters instead could vote early, by mail, or on Election Day. ECF No. 5, at 7. But that argument is a nonsequitur. Those options are available only if the voter has *already* registered. It does absolutely nothing for those aspiring eligible voters who have yet to register. And because Florida's statutory framework would categorically deny the right to vote to those individuals, it is a severe burden that is subject to strict scrutiny. *See Burdick*, 504 U.S. 434. Even assuming that the State of Florida could point

---

[2] To ensure the safety of its workers, Governor Scott directed the state offices in more than thirty of Florida's sixty-seven counties to close. The U.S. Postal Service also suspended operations in the affected areas. ECF No. 5, at 6.

10

to a valid compelling interest (and this Court doubts that it can), it is nonsensical to argue that it is narrowly tailored to that interest. Florida's statutory framework fails strict scrutiny and is therefore unconstitutional.

Even assuming that Florida's statutory framework was subject to a more flexible *Anderson–Burdick* test, it still would be unconstitutional. In no way could Defendants argue that there is some sort of limitation that requires them to burden the constitutional rights of aspiring eligible voters. Many other states, for example, either extended their voting registration deadlines in the wake of Hurricane Matthew or already allow voter registration on Election Day. *See infra* pp. 13–14. There is no reason Florida could not do the same. In so ruling, this Court is not suggesting that Florida has to allow voter registration up to Election Day. Rather, it simply holds that the burden on the State of Florida in extending voter registration is, at best de minimis. And, because Florida cannot put forth a "legitimate state interest[] sufficiently

11

weighty to justify the" burden, *Billups*, 554 F.3d at 1352 (quotation omitted), Florida's statutory framework is also unconstitutional under the *Anderson–Burdick* test.

Finally, Florida's statutory framework is unconstitutional even if rational basis review applied (which it does not). Quite simply, it is wholly irrational in this instance for Florida to refuse to extend the voter registration deadline when the state already allows the Governor to suspend or move the election date due to an unforeseen emergency. § 101.733, Fla. Stat.

Because Florida's statutory framework is unconstitutional under any test that could apply, Plaintiff is likely to prevail on the merits.

As explained above, in addition to the likelihood of success on the merits, three other factors influence the propriety of a temporary restraining order: whether "irreparable injury will be suffered if the relief is not granted," whether "the threatened injury outweighs the harm the relief would inflict on the" defendants, and "whether entry of the relief would serve the public interest." *Schiavo*, 403 F.3d at 1225–26.

It is unquestionable that Plaintiff and its members would suffer irreparable injury if a temporary restraining order is not

12

granted. *See, e.g.*, *Obama for Am.*, 697 F.3d at 436. This is not a case where failing to grant the requested relief would be a mere inconvenience to Plaintiff and its members. Instead, if aspiring eligible Florida voters are barred from registering to vote then those voters are stripped of one of our most precious freedoms. This isn't golf: there are no mulligans. Once the voter registration deadline passes, "there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

  Likewise, the balance of hardships favors Plaintiff. This case pits the fundamental right to vote against administrative convenience. Of course, the State of Florida has the ability to set its own deadlines and has an interest in maintaining those deadlines. But it would be nonsensical to prioritize those deadlines over the right to vote, especially given the circumstances here. Other states ravished by Hurricane Matthew extended their registration deadline to protect voters. *See, e.g.*, *The Latest: Hurricane Conditions Expected in Next Few Hours*, ABC News (Oct 6, 2016, 4:15 p.m.), http://abcnews.go.com/US/wireStory/latest-floridas-airports-hurricane-delays-42610982. In fact, fifteen other states, including, for example, Iowa, even allow registration on

13

Election Day. *See, e.g.*, Iowa Code § 48A.7A (2016) ("A person who is eligible to register to vote and to vote may register on election day by appearing in person at the polling place for the precinct in which the individual resides and completing a voter registration application, making written oath, and providing proof of identity and residence."). It is incomprehensible that Florida could not follow suit.

Finally, the injunction is undoubtedly in the public interest. The Constitution guarantees the right of voters "to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). Cementing unconstitutional obstacles to "that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). These voters have already had their lives (and, quite possibly, their homes) turned upside down by Hurricane Matthew. They deserve a break, especially one that is mandated by the United States Constitution. Ensuring that they can exercise their constitutional right to vote thus promotes the public interest.

One final note. Hurricane Matthew's effects are not circumscribed to one region of the state. It affected jobs, families, and

more across the state. It would be grossly inappropriate, for example, to hold that aspiring eligible voters in Jacksonville could register later than those in Pensacola. Therefore, this Order holds that Florida's current statutory framework is unconstitutional. That unconstitutionality is not limited to those in the areas most affected by Hurricane Matthew. It extends to the entire State of Florida.

### III

It has been suggested that the issue of extending the voter registration deadline is about politics. Poppycock. This case is about the right of aspiring eligible voters to register and to have their votes counted. Nothing could be more fundamental to our democracy.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for a Temporary Restraining Order, ECF No. 4, is **GRANTED**. Defendant Detzner is directed to copy the supervisors of elections with this order and direct the supervisors of elections to extend the new voter registration deadline to Wednesday, October

12, 2016, at 5:00 p.m., and accept registrations up to that date and time.

2. Plaintiff must serve this Order on Defendants Scott and Detzner by 11:00 a.m., October 11, 2016.

3. The Clerk shall issue a notice of hearing. The matter is set for Wednesday, October 12, 2016, at 10:00 a.m., at which time a hearing shall be held in Tallahassee as to whether Plaintiff's request for a preliminary injunction should be granted. Plaintiff must likewise serve the notice on Defendants Scott and Detzner by 11:00 a.m., October 11, 2016.

**SO ORDERED on October 10, 2016.**

**s/Mark E. Walker**  
**United States District Judge**
